**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALASTAIR M. INGRAM AND DONNA INGRAM, <br><br>Appellants, <br><br>vs. <br><br>DAVID BURCHARD, CHAPTER 13 TRUSTEE, <br><br>Appellee. | Case No. : 12-cv-408-YGR <br><br> ORDER AFFIRMING RULING OF BANKRUPTCY COURT |

Debtors Alastair and Donna Ingram ("Appellants") appeal from a Bankruptcy Court order denying confirmation of their Chapter 13 plan. Appellants argue the Bankruptcy Court erred when it applied a *per se* rule to deny confirmation. Additionally, Appellants assert the Bankruptcy Court committed clear error when it found Appellants did not propose their plan in good faith.

## BACKGROUND

On August 29, 2011, appellants Alastair and Donna Ingram filed for bankruptcy pursuant to Chapter 13 of the United States Bankruptcy Code ("the Code"). In their bankruptcy schedules, Appellants listed assets including a house, two automobiles, miscellaneous funds in bank accounts, personal and household furnishings, and over $103,000.00 in several retirement accounts, all of which were exempted. Appellants' Schedule F lists $39,611.73 in total unsecured debt. Appellants' home is encumbered by two mortgages. As of the date of the bankruptcy petition, the first deed of trust was under-secured by $19,825.00. The second deed of trust was wholly unsecured with a value of $26,606.72 (the "second mortgage"). The Appellants' Schedules I and J show a negative net monthly income of $436.18. Their Chapter 13 Statement of Current Monthly Income and

Calculation of Commitment Period and Disposable Income (Official Form 22C) reflects a negative monthly disposable income of $475.01, less $799.72 in monthly business expenses.

Appellants first submitted a Chapter 13 plan ("Original Plan") that proposed monthly payments of $154.32 for thirty-six (36) months for a total payout of $5,555.52.  Under that plan, Appellants would have continued to make regular payments on their first mortgage, voided the lien securing the second mortgage (via an ancillary motion brought under section 506 of the Bankruptcy Code), and paid nothing to general unsecured creditors.

Appellants filed a Motion for Order Determining Secured Claim and Voiding Lien for the second mortgage on September 9, 2011.  On October 15, 2011, the Bankruptcy Court granted the motion and entered an Order Determining Secured Claim and Voiding Lien.

An initial confirmation hearing for the Original Plan was held on November 9, 2011.  Neither the trustee nor any creditor objected to the Original Plan.  Because the Original Plan paid only attorney and administrative fees, the Bankruptcy Court raised the issue of good faith *sua sponte*, and set the matter for final hearing on December 14, 2011.

Before the hearing, on November 28, 2011, Appellants filed a First Amended Chapter 13 Plan ("the Amended Plan").  While the two plans were virtually identical, the Amended Plan proposed lower monthly payments of $115.74 for a longer term of forty-eight (48) months.  Like its predecessor, the Amended Plan proposed payments sufficient only to cover the fees of the trustee and Appellants' counsel.  While both plans proposed different payment amounts over different periods of time, they yielded the same total payout of $5,555.52.

The Bankruptcy Court held its final confirmation hearing on December 14, 2011.  Appellants and their attorney provided testimony in the form of declarations that described the Appellants' circumstances and explained why they sought relief under Chapter 13.  Appellants testified, *inter alia*, that they would be able to make all future Amended Plan payments and, to the best of their knowledge, all filings were complete and accurate.  During the hearing, the Bankruptcy Court heard oral argument from Appellants' counsel.  The court questioned why the higher monthly payments under the Original Plan were not extended another 12 months under the Amended Plan, so as to allow at least a small dividend for unsecured creditors.  Appellants maintained that while their

Amended Plan term was extended by 12 months,[1] they were not required to pay any dividends to unsecured creditors because they lacked any projected disposable income.

Because Appellants had filed a confirmation brief just one day before the final confirmation hearing, counsel for the trustee requested ten days to review and respond to the brief. (Appellants Excerpts of the Record, Docket No. 5-1 ("E.R.") 31 at 10.) The Bankruptcy Court granted the request and took the matter under advisement. (*Id*. at 15.) On December 20, 2012, the Trustee filed an Objection to Confirmation of Plan noting the Amended Plan lacked good faith because it paid only administrative and attorney's fees while providing no dividend to unsecured creditors and stripping the second mortgage. The Bankruptcy Court issued its Memorandum of Plan Confirmation on January 3, 2012 ("the Memorandum") (E.R. 27.)[2]

An order denying confirmation was entered on January 5, 2012. (E.R. 28.) The Bankruptcy Court's Order stated that "a debtor does not meet the good faith requirement... where, as here, the debtor makes no effort to repay any debts other than to counsel, a plan which would pay something on some debts is feasible, and the debtor's purpose in filing a Chapter 13 is to achieve a result forbidden under Chapter 7." (E.R. 27 at 3.) On January 19, 2012, the Appellants filed their Notice of Appeal. (E.R. 29.)

**JURISDICTION AND STANDARD OF REVIEW**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). A district court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact under a clearly erroneous standard. *See* Fed. R. Bankr. 8013; *In re Wegner*, 839 F.2d 533, 536 (9th Cir. 1988); *Andrews v. Loheit*, 155 B. R. 769, 770 (B.A.P. 9th Cir. 1993) (citing *In re Warren*, 89 B.R. 87, 90 (B.A.P. 9th Cir. 1988). Confirmation of a Chapter 13 plan involves mixed questions of law and fact. *Id.* Whether a bankruptcy court applied the correct legal standard is a finding of law reviewed *de novo*. *Bunyan v. United States ("In re Bunyan")* 354 F.3d 1149, 1150 (9th Cir. 2004). A decision that a debtor's plan was not proposed in good faith is a finding of fact reviewed for clear

---

[1] The Original Plan offered a term of 36 months while the Amended Plan proposed a term of 48 months.

[2] In the Memorandum, the Bankruptcy Court acknowledged the Trustee's objection to confirmation. but "elected to decide the case as if the good faith objection was solely *sua sponte*." (E.R. 27 at 1.)

3

error. *Downey Savings and Loan Association v. Metz ("In re Metz")*, 820 F.2d 1495, 1497 (9th Cir. 1987).

The "clearly erroneous" standard requires that the district court, "after reviewing the entire record, [be] left with the definite and firm conviction [that] a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Where a court's factual findings are plausible in light of the record viewed in its entirety, the reviewing court may not reverse. *Anderson*, 470 U.S. at 574. This is true even where the reviewing court would have weighed the evidence differently had it been sitting as the trier of fact. *Id.* Where two permissible conclusions co-exist based on the evidence, a fact finder's choice between them cannot be clearly erroneous. *Id.*

## DISCUSSION

**I.   STANDARD FOR DETERMINING GOOD FAITH UNDER CODE SECTION 1325 (A)(3)**

Appellants first argue the Bankruptcy Court applied the wrong legal standard to deny confirmation. Specifically, Appellants argue the Bankruptcy Court applied a *per se* rule against fee-only Chapter 13 cases instead of considering the totality of the circumstances, as required in the Ninth Circuit. They also assert the Bankruptcy Court neglected to consider all relevant circumstances, including any militating factors that may have portrayed Appellants in a more sympathetic light and warranted confirmation.

In opposition, the Trustee contends the Bankruptcy Court applied the correct legal standard. It argues the entire record demonstrates that the Bankruptcy Court considered the totality of the circumstances and did not rely on a *per se* rule when it denied confirmation. (*Id.* at 13.) Further, the Trustee claims the Bankruptcy Court properly considered all relevant factors to find the absence of good faith. (*Id.* at 14-15.)

Chapter 13 of the Bankruptcy Code permits debtors to develop and perform under a plan to repay debts over a period of time. *See Fid. & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 89 (B.A.P. 9th Cir. 1988). Bankruptcy courts have an independent duty to review Chapter 13 plans for compliance with the Code. *United States Aid Funds v. Espinosa*, __U.S. __, 130 S.Ct. 1367,

4

1381 (2010). Before a bankruptcy court can confirm a Chapter 13 plan, it must ensure the plan complies with the requirements set forth in 11 U.S.C. § 1325(a). *See Heal v. Burchard (In re Heal)*, 2010 WL 3834017 (N.D. Cal. Sept. 28, 2010). Under section 1325(a)(3), a Chapter 13 plan may be confirmed only if it has been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Objections to a plan may be raised *sua sponte* by the bankruptcy court or by a party-in-interest. *In re Warren,* 89 B. R. 87 at 90; *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994). Once an objection has been raised, the debtor bears the burden of proving good faith. *Id.*

In considering whether to confirm a Chapter 13 plan over a good faith objection, Ninth Circuit authority requires courts to consider the "totality of the circumstances," including all mitigating factors, on a case-by-case basis. *Goeb v. Heid* (*In re Goeb*), 675 F.2d 1386, 1391 (9th Cir. 1982). The good faith inquiry focuses on whether the debtor acted equitably in proposing the plan. *Id.* at 1390-91. That determination requires courts to apply the *Leavitt* factors, namely: (1) whether the debtor misrepresented facts in the petition or plan, unfairly manipulated the bankruptcy code, or otherwise filed the petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtors intended to defeat state court litigation; and (4) whether there was any egregious behavior on the part of the debtors. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999); *see also Drummond v. Cavanaugh*, 250 B.R. 107, 114 (9th Cir. B.A.P. 2000). The *Leavitt* factors are not exhaustive and courts have considered several others, including:

    (1) the amount of the proposed payments and the amount of the debtor's surplus;
    (2) the debtor's employment history, ability to earn, and likelihood of future increase in income;
    (3) the probable or expected duration of the plan;
    (4) the extent of preferential treatment between classes of creditors;
    (5) the extent to which secured claims are modified;
    (6) the type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;
    (7) the existence of special circumstances such as inordinate medical expenses;
    (8) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
    (9) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
    (10) the burden that the plan's administration would place upon the trustee.

*See Drummond v. Welsh (In re Welsh)*, 465 B.R. 843 (B.A.P. 9th Cir. 2012); *In re Warren,* 89 B. R. at 93.

While analyzing the totality of the circumstances, courts may take into consideration that Chapter 13 plans which are, in essence, "veiled Chapter 7" cases are strongly disfavored. *In re Warren*, 89 B. R. at 95. Unlike a Chapter 7 bankruptcy, which liquidates all of a debtor's unsecured debts immediately, Chapter 13 permits a debtor to avoid such liquidation and pay something on his/her debts over time, in accordance with a court-approved payment plan. *See In re Biggar*, 110 F.3d 685, 687 (9th Cir. 1997) (Chapter 7 bankruptcy discharges all pre-petition debts save those excepted in Section 523). A "veiled Chapter 7" case involves a Chapter 13 plan that essentially liquidates unsecured debt as in a Chapter 7 plan, paying only trustee and legal fees over the plan's term. *In re Paley,* 390 B. R. 53, 59-60 (Bkrtcy. N.D.N.Y. 2008).[3] These types of plans are also known as "fee-only" plans. *Berliner v. Pappalardo (In re Puffer)*, 674 F.3d 78, 80-81 (1st Cir. 2012) (rejecting a per se rule against fee-only plans). Often, debtors in veiled Chapter 7 cases file Chapter 13 either because they cannot meet the statutory qualifications for filing a Chapter 7 or because they wish to attain a benefit prohibited under Chapter 7 while still discharging all unsecured debt. *In re Paley*, 390 B. R. at 59-60.

The principle argument against veiled Chapter 7 cases is that Congress enacted Chapter 13 with certain restrictions, and certain benefits, not found under Chapter 7. *In re Tran*, 814 F.Supp.2d at 950. The benefits in Chapter 13 proceedings exist to incentivize debtors to commit to some repayment plan in lieu of complete liquidation. *Id.* For instance, in the case at bar, Appellants claim to have chosen Chapter 13 because it allowed them to strip their second mortgage, thereby rendering it a dischargeable debt and "saving their home." While stripping the second mortgage is permissible under Chapter 13, the U.S. Supreme Court has made clear that lien-stripping is prohibited under Chapter 7. *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992). Likewise, nominal repayment plans are often viewed as evidence of unfair manipulation of the Chapter 13 process, and therefore bad faith.

---

[3] The Bankruptcy Code does not require that Chapter 13 plans provide for substantial repayment of unsecured debts. *In re Goeb*, 675 F.2d at 1388 (9th Cir. 1982). However, nominal repayment is one piece of evidence that the debtor is unfairly manipulating Chapter 13 and therefore acting in bad faith. *Id.* at 1391.

*In re Goeb*, 675 F.2d at 1391; *In re Tran,* 814 F.Supp.3d at 950.  Thus, reviewing courts have held that the bankruptcy courts should not neutralize the statutory restrictions and incentives in the Code by confirming Chapter 13 plans that are nothing more than veiled Chapter 7 cases, *i.e.* complete discharge of debt without any payment to unsecured creditors.  *In re Tran*, 814 F.Supp.2d at 950.

As stated above, Appellants argue the Bankruptcy Court applied a *per se* rule against its "fee-only" Chapter 13 plan rather than considering the totality of the circumstances, and thereby erred.  The Ninth Circuit has not specifically ruled as to whether such a *per se* rule would be permissible.  The First Circuit, however, while rejecting a *per se* rule, has cautioned that "[the] dangers of such plans are manifest, and a debtor who submits such a plan carries a heavy burden of demonstrating special circumstances that justify its submission." *In re Puffer,* 674 F.3d at 79.  The bankruptcy courts themselves have taken different views on fee-only plans.  Compare *In re Paley,* 390 B.R. at 59 (rejecting fee-only plan as contrary to spirit and purpose of Bankruptcy Code), and *In re Dicey,* 312 B.R. 456, 459–60 (Bankr. D.N.H. 2004) (same), with *In re Elkins,* No.  09–09254–8, 2010 WL 1490585, at *3 (Bankr. E.D.N.C.  Apr.  13, 2010) (stating "[t]here are many permissible reasons to file [fee-only] chapter 13 cases"), and *In re Molina,* 420 B.R. 825, 829–33 (Bankr. D.N.M. 2009) (upholding good faith of a fee-only plan).

At least two reviewing district courts in the Ninth Circuit, though not applying a *per se* rule, have upheld denials of confirmation of fee-only plans similar to those in the case at bar.  *See Heal v. Burchard, (In re Heal)*, C10-00397, 2010 WL 3834017 (N. D. Cal. Sept. 28, 2010); *In re Tran*, 814 F.Supp.2d 946, 948 (N. D. Cal. 2011).  *In re Heal* is particularly instructive.  The appellants in that case made the same arguments through the same counsel as Appellants here.  In *In re Heal*, the court affirmed the denial of plan confirmation, holding that a lien-strip plus fee-only plan was evidence of manipulation of the Code and suggestive of bad faith.  *In re Heal*, 2010 WL 3834017 at *3.  In *In re Tran*, the court likewise affirmed a finding of bad faith involving a plan that provided no dividends to unsecured creditors and sought to strip a second mortgage.  *In re Tran*, 814 F.Supp.2d at 948.  The court held the fee-only and lien-stripping attributes of the plan were an attempt to manipulate the Code and skirt the holding in *Dewsnup*.  *Id*. at 951.

1      The First Circuit's ruling in *In re Puffer* upon which Appellants rely is not inconsistent.
2 There the Court did reject the use of a *per se* rule against fee-only plans because such an rule
3 undermined the principles of equity required to evaluate the plan.  674 F.3d. at 84.   However, the
4 Court remanded the case back for further proceedings consistent with its ruling.  *Id.* at 78, 84.  While
5 the Court instructed that lower courts cannot automatically reject a proposed fee-only plan, (*id.* at
6 83), nor did it sanction them.  To the contrary it warned about the "dangers of such plans" which
7 could be "vulnerable to abuse by attorneys seeking to advance their own interests without due regard
8 for the interests of the debtors."  It further noted that these fee-only plans "should not be used as a
9 matter of course," but agreed that "there may be special circumstances, albeit relatively rare, in
10 which this type of odd arrangement is justified."  *Id.*

11      The Court now turns to whether the Bankruptcy Court applied the *per se* rule or used a
12 totality of the circumstances analysis.  The record here shows that Appellants proposed two different
13 plans.  The Original Plan provided payments of $154.32 for 36 months, while the Amended Plan
14 called for payments of $115.74 per month for 48 months.  The hearing transcript reveals that, during
15 a colloquy between Appellants' counsel and the Bankruptcy Court, the court expressed its concern
16 over the Amended Plan's lack of dividends to unsecured creditors and questioned why Appellants
17 lowered the monthly payment amount between the Original and Amended Plans.  (E.R. 31.)
18 Appellants refused to explain why they could only make the lower monthly payments in the
19 Amended Plan after clearly representing they could pay $38.52 more per month in the Original Plan.
20 (E.R. 31.)  Appellants further refused to demonstrate any material change in their projected income
21 that necessitated the reduction in monthly payment amounts between the two plans.  (*Id.*)  Rather
22 than satisfy their burden, Appellants "dug in their heels,"[4] and refused to make a *prima facie*
23 showing of good faith.  (*Id.*)  Here, the record shows no attempt to provide evidence of a "special
24 circumstance" which would justify the rare use of this type of the Amended Plan.

---

[4] During the Final Confirmation Hearing, the Bankruptcy Court gave Appellants the option either to make a prima facie showing of good faith or to "dig in their heels" and argue the issue on appeal. (E.R. 31.) Counsel for Appellants stated that it was he who was digging in his heels rather than Appellants because it is not the role of the bankruptcy court to draft the Chapter 13 plan. (E.R. 31.)

The Bankruptcy Court is not a rubber stamp. It need not ignore disparities in the record, such as the one created when the Appellants themselves offered different monthly payments under two different plans. To the contrary, the disparity itself constitutes a part of the totality of the circumstances. Notably absent in the record, and as referenced by the Bankruptcy Court, is a justification for the disparity, i.e. that Appellants' job security was weakened, or their ability to work diminished. As both the Bankruptcy Court's Memorandum and the hearing transcript demonstrate, the Bankruptcy Court not only evaluated the Amended Plan's lien-stripping provision, but the Appellants' financial circumstances, among others. (E.R. 27, 31). Moreover, the court offered Appellants the opportunity to make a prima facie showing of good faith, which offer was rejected. In effect, Appellants argue that the Bankruptcy Court must blindly accept plans and not question. Such an argument stands contrary to the court's independent duty to evaluate.

The record here does not demonstrate that the Bankruptcy Court based its decision solely on the Appellants' proffer of a plan with a lien-stripping, fee-only provision. While such plans may be appropriate in rare circumstances, they can be found to be improper. The fact that the Bankruptcy Court did not ultimately approve the plan is not dispositive on the issue of the manner in which it reached its decision. The Court therefore finds that the Bankruptcy Court did not apply the wrong legal standard in denying confirmation of the Amended Plan.

**II.    THE BANKRUPTCY COURT'S TOTALITY OF THE CIRCUMSTANCES ANALYSIS**

Appellants next challenge the Bankruptcy Court's finding that the Amended Plan was not proposed in good faith. A decision that a debtor's plan was not proposed in good faith is a finding of fact reviewed for clear error. *Downey Savings and Loan Association v. Metz ("In re Metz")*, 820 F.2d 1495, 1497 (9th Cir. 1987). A finding of fact is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction a mistake has been committed." *Anderson v. City of* Bessemer, 470 U.S. 564, 573 (1985) (*quoting United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Where a court's factual findings are plausible in light of the record viewed in its entirety, the appellate court must affirm. *Anderson*, 470 U.S. at 574.

Appellants argue that because the Amended Plan technically was consistent with the Code, the record was insufficient to establish bad faith or to show a proposed inequitable plan. Appellants

claim their pre-hearing declarations contained all the relevant information the court should have considered when it determined the issue of good faith. Further, the court should not have permitted the Amended Plan's term or its lack of distributions to unsecured creditors to weigh heavily on the issue of good faith. By focusing its inquiry on the amount and term of plan payments, Appellants maintain the Bankruptcy Court acted contrary to Congressional intent and imposed judicially-created bars to confirmation above and beyond what the Code requires. (*Id.* at 20.)

In response, the Trustee argues the Bankruptcy Court applied the law correctly when it found a lack of good faith and refused confirmation here, citing *In re Paley*, 390 B.R. 53 (Bankr. N.D.N.Y. 2008) and in *In re Tran,* 814 F. Supp. 2d 946, 950 (N.D. Cal. 2011). The Trustee asserts that disguised Chapter 7 cases undermine the distinction between the Chapters and frustrate the spirit of Chapter 13. (*Id.* at 20-22.) Therefore the Bankruptcy Court did not err when it required Appellants make a *prima facie* showing of good faith to answer its concerns prior to confirmation. (*Id.* at 22.)

The Court finds that the record here supports the Bankruptcy Court's finding of a lack of good faith. It is true that certain facts favor confirmation of Appellants' Amended Plan, including the undisputed facts that Appellants did not misrepresent any facts in proposing both the Original and Amended Plans; neither Appellant had filed recently for bankruptcy or was otherwise barred from filing for a Chapter 7 bankruptcy; Appellants had no projected disposable income; and there was no apparent avoidance of state court litigation. The Amended Plan exceeded the statutory minimum of 36 months for solvent debtors; unsecured creditors would receive the same dividend they would have if the case had been filed as a Chapter 7; and the Amended Plan did not materially increase the burden on the trustee. *See In re Leavitt*, 171 F.3d at 1224; *In re Warren,* 89 B.R. at 93.

However, other facts in the record support a finding of lack of good faith and a denial of confirmation. The Amended Plan liquidated unsecured debt with no repayment to unsecured debtors, contrary to the purposes of Chapter 13. Their Amended Plan, like their Original Plan, covered only legal and administrative fees. Moreover, Appellants proposed two plans, the first of which indicated that Appellants *could have* afforded a nominal dividend to unsecured creditors under the terms of the Amended Plan. Appellants then refused to justify the discrepancy. And, questions remained as to whether there was any change in Appellants' expected future income in the time

between the proposal of the Original and Amended Plans. In addition, the Amended Plan afforded Appellants the benefit of the lien strip, a benefit they would not have been able to obtain under Chapter 7. *See In re Warren*, 89 B.R. at 93. These issues implicate *Leavitt* factors 1-4 and 6, *supra*. The record is devoid of any evidence of rare or special circumstances.

Appellants argue the greater number of factors in their favor should lead a reasonable trier of fact to find good faith. They further claim the Bankruptcy Court weighed the fee-only and lien-stripping aspects of the Amended Plan far too heavily and added hurdles beyond what the law technically requires. Appellants claim the Bankruptcy Court did not give appropriate weight to the factors in their favor, particularly their lack of projected income.

Whether other courts would have weighed the factors differently is not a basis for reversing the Bankruptcy Court's determination. *Anderson*, 470 U.S. at 574. The Bankruptcy Court received declarations from Appellants prior to denying confirmation. In the Memorandum, the Bankruptcy Court repeatedly referenced Appellants' dire financial circumstances. At the same time, the Bankruptcy Court found that the Amended Plan was contrary to the Code and asked for clarifications which went unanswered. There is sufficient evidence in the record to support the Bankruptcy Court's factual findings. Therefore, this Court is not "left with a definite and firm conclusion" that the Bankruptcy Court made a mistake. *See Id.* at 573. On the record here, the Bankruptcy Court's findings were plausible. While no one factor should be dispositive on the issue of confirmation, several factors weighed against it. The facts here simply do not support the contention that the Bankruptcy Court's findings were clearly erroneous.

## CONCLUSION

Based on the entire record, the Court finds that the Bankruptcy Court applied the correct legal standard and did not commit clear error in its good faith determination. Accordingly, the Bankruptcy Court's denial of confirmation for the Amended Plan is **AFFIRMED.**

**IT IS SO ORDERED.**

September 28, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**